FILED
IN CLERK'S OFFICE

UNITED STATES DISTRICT COURT
OF MASSACHUSETTS

2005 FEB 28  P 3: 58

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| XURUI DENG, a/k/a SHERRY YOUNG, ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> METROPOLITAN LIFE INSURANCE ) <br> COMPANY (a/k/a METLIFE) ) <br> ) <br> Defendant ) <br> ) | Civil Action No. <br> **04-12421-JLT** |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL

### *I. Introduction*

The Defendant's Motion to Compel discovery from a third-party (Sgt. Edward Foster of the Massachusetts State Police), along with the Motion to Quash the deposition subpoena that was filed in this action by the Massachusetts Attorney General's Office on Sgt. Foster's behalf, turn on whether the Defendant in this case has met its burden of showing circumstances that would justify overriding the *"law enforcement and deliberative process privileges"* that are discussed at length in the Attorney General's Memorandum in Support of the Motion to Quash. It is respectfully submitted that a brief review of the factual and procedural background of this matter will assist the Court in making this determination, and will support a finding that the Defendant has not and cannot meet that burden.

## II. Factual and Procedural Background

### A. Summary of the Complaint of the Circumstances Giving Rise to this Action

This is an action for monetary relief arising out of the Defendant's failure to pay benefits under a life insurance policy following the death of the Plaintiff's husband on October 10, 2001. The claims asserted within the Complaint include what are commonly referred to as *"insurer bad faith"* claims, such as claims under Massachusetts General Laws Chapter 93A (unfair and deceptive practices) and 176D (unfair insurance claims practices). The conduct complained of includes a failure to act in a reasonable, prompt and fair manner in response to (a) the claim for benefits that the Plaintiff submitted to MetLife on October 24, 2001, and (b) the demand letter submitted under the above-referenced statutes on July 7, 2003 (a copy of which is attached to the Complaint as Exhibit A), necessitating the commencement of the instant action.

As is evidenced by the Answer that the Defendant filed in this case, the Defendant ("MetLife") does not dispute the existence of the policy or the fact that a claim for benefits was filed several years ago. It is also undisputed that, during the first few years of that prolonged period, MetLife sent correspondence to the Plaintiff expressly acknowledging same, providing her with assurances to the effect that it was *"obtaining some additional information"* with respect to the claim, that it was making *"customary inquiries,"* that the claim was *"continuing to receive [MetLife's] attention,"* that MetLife was *"giving your claim our close attention,"* that *"every effort"* was being made to *"conclude these inquiries as quickly as possible,"* that MetLife *"expected to complete our inquiries shortly,"* and that

MetLife *"will keep you informed."* See generally, with respect to these representations and assurances, Annex A to this Opposition, which consists of copies of some of the correspondence in question, all of which were produced as part of the automatic discovery conducted in this case.

A similar representation was made by MetLife to the attorney whom the Plaintiff was initially required to hire in an effort to bring this matter to an end, who exchanged correspondence with Metlife back in February of 2003. (See, in this regard, the correspondence attached hereto as Annex B, copies of which were produced as part of the automatic discovery conducted in this case.) However, having heard nothing further from MetLife following that time, the Plaintiff was required to have that attorney send a formal demand letter to MetLife, dated July 7, 2003, in which he explicitly called MetLife's attention to the fact that their conduct was in violation of applicable law and demanded payment of the face amount of the policy without further delay. Yet, instead of paying the policy at that time, or attempting to offer some explanation as to why it was not in a position to do so, Metlife radically increased its exposure in this matter by failing to provide any response to that letter at all. The legal significance of such a failure to respond was referenced within the letter itself, a copy of which was attached to the Complaint in this matter as Exhibit A and has been attached hereto as Annex C.

In addition to refraining from providing any meaningful response to the Plaintiff's claim for benefits, or any response at all to the demand letter under Massachusetts General Laws Chapters 93A and 176D, MetLife refrained from filing an action for a declaratory judgment, as it easily could have done if it had any good faith basis for its conduct in this

matter. Thus, by reason of MetLife's acts and omissions in the handling of this matter, the Plaintiff was left to infer that MetLife lacked any good faith basis for the conduct that it was engaging in, and that MetLife had instead elected to effectively force her to file a lawsuit in order to obtain relief in this regard. In any event, as result of MetLife's handling of this matter, the Plaintiff was required to hire litigation counsel and commence the instant action in October of 2004.

*B. Summary of the Defendant's Answer and of the Circumstances Giving Rise to the Instant Motions*

To the extent that MetLife disputes the central thrust of the Plaintiff's claims concerning MetLife's failure to reasonably investigate and respond to the claim for benefits and to the demand letter under Massachusetts General Laws Chapters 93A and 176D, no genuine basis for such a dispute can be found within the Answer which it filed in this case. For example, within that Answer, which was filed more than three years after the insured's death and the submission of the claim for benefits, Metlife professes, at paragraph 5 thereof, to lack information sufficient to form a belief as to whether the insured is even dead. While this may, perhaps, be excused as attributable to the use of a boilerplate form of pleading, there are further averments within the Answer that quite clearly do not constitute boilerplate, and which serve to illustrate MetLife's ongoing malfeasance in this matter. More specifically, at page four of the Answer, after asserting a number of boilerplate affirmative defenses, MetLife purports, in a highly unusual form of pleading entitled "*Additional*

*Defenses,*" to "*reserve the right to amend its Answer*" so as to assert additional defenses "*should an investigation reveal*" that it has a basis for doing so. [1]

The above-referenced language in MetLife's Answer explains why this Court presently has before it a Motion to Compel and a Motion to Quash: the Defendant is seeking to use the power of this Court to conduct an "*investigation*" in an effort to determine whether there might be some good faith basis for the Defendant to assert a defense that it presently has no good faith basis for asserting, and that it has not asserted within its Answer.

### C. Summary the Defendant's Argument in Support of the Motion to Compel

MetLife's argument in support of its Motion to Compel consists of two sentences appearing in a short, three paragraph "*Argument*" section at page four of Defendant's Memorandum in Support of that motion. More specifically, MetLife argues that this Court should enter an order compelling that discovery, overriding the "*law enforcement and deliberative process privileges*" and the policy concerns that animate those privileges (as discussed at length in the Attorney General's Motion to Quash), because:

---

[1] There is no precedent, or basis under the Rules of Civil Procedure, for inserting into an Answer an assertion that it is possible that some hypothetical defense may arise in the future. If a defendant has a good faith basis for asserting a defense, and can assert it consistent with Rule 11, then he or she is free to assert it as a defense within his or her Answer. However, the insertion into an Answer of a suggestion that the Defendant may be able to assert some other defense at some point in the future "*should an investigation reveal*" that he or she has a good faith basis for doing so does not comply with the applicable rules of pleading and is inappropriate for several reasons. The most obvious reason is that it permits the Defendant to insinuate the existence of potential defenses that the Defendant is not able to affirmatively plead consistent with Rule 11. It is respectfully submitted that preventing litigants from inserting such insinuations into pleadings, and from seeking to engage in discovery premised upon such insinuations instead of on well-grounded allegations of fact, was one of the primary purposes for the enactment of that rule.

> *Without testimony from someone associated with the investigation, MetlLife cannot assess whether Plaintiff will be charged with acts that would make her ineligible to received benefits under the Temporary Insurance Agreement. Although the investigators may have little information that will assist MetLife in determining if the benefits are payable, MetLife is obligated to make every reasonable inquiry that may lead to an informed decision.*

(Quoting from MetLife's Memorandum in Support of its Motion to Compel Discovery, at page 4). This same argument, set forth in identical language, constitutes the sole argument raised by MetLife in its Opposition to the Motion to Quash. (*See*, Defendant's Memorandum in Opposition to the Motion to Quash, at pages 3-4).

## *II. Argument*

The present action does not constitute a vehicle for MetLife to try to perform an investigation into whether or not there might be some basis upon which it could assert a defense that it has not raised. Nor does the present action constitute a vehicle for MetLife to continue to not perform a contractual obligation pending a determination by MetLife as to whether or not it can find some basis for refusing to perform. This action is, instead, an action for damages flowing from MetLife's failure to perform its contractual obligations and failure to conduct a reasonable and efficient investigation consistent with the obligations that it has had over the past three years. The positing of hypotheticals about what might be "*revealed*" through a future "*investigation*" does not address the issue of whether, as claimed by the Plaintiff, the Defendant failed to meet its obligations under the policy and its obligations under the laws applicable to insurance practices over the course of the last three years. To the contrary, within the context of the instant case, it simply constitutes further

evidence in support of one of the Plaintiff's central claims with respect to MetLife's approach to this matter: that instead of either paying or denying the policy, or providing any response to the demand letter referred to above, MetLife elected to simply hold onto and enjoy the use of the policy money, and to effectively force the Plaintiff to file a civil action against the Defendant.

The above-referenced language in MetLife's Answer, in which it purports to *"reserve the right to amend its Answer"* so as to assert additional defenses *"should an investigation reveal"* that it has a basis for doing so, and the sole argument advanced by MetLife in support of its Motion to Compel and its Opposition to the Motion to Quash, to the effect that this Court should override the *"law enforcement and deliberative process privileges"* because it is hypothetically possible that this might allow the Defendant to find some basis for asserting a defense that the Defendant has not raised, are, thus, entirely consistent with one of the central claims being advanced against the Defendant in this case. As the Defendant itself states in its argument in support of the Motion to Compel and in Opposition to the Motion to Quash: *"Metlife is obligated to make every reasonable inquiry that may lead to an informed decision."* Metlife's failure to make such an inquiry is the precise reason why it is being sued. Metlife's attempt to belatedly conduct that investigation now, utilizing the subpoena power of this Court, and notwithstanding the significant public policy issues raised by the Attorney General, in an effort to see whether it might be able to find some basis for asserting a defense that it has not raised, should not be countenanced by this Court.

In view of the foregoing circumstances, MetLife cannot be fairly interpreted as having met its burden of showing circumstances that would allow this Court to justifiably override

7

the "*law enforcement and deliberative process privileges*" that are discussed at length in the Attorney General's thoughtful Memorandum in Support of the Motion to Quash.[2] It is, accordingly, respectfully submitted that the Defendant's Motion to Compel should be denied, and that the Motion to Quash should be allowed.

Respectfully submitted
By her attorneys,

*(signature)*

James F. Ring, Esq. (BBO # 542569)
CHU RING & HAZEL, LLP
49 Melcher Street
Boston, Massachusetts 02210
(617) 443-9800 ext 225

*Certificate of Service*

I hereby certify that on this 28th day of February, 2005, I served the foregoing Opposition by causing a copy thereof to be sent via telefax and overnight delivery service to counsel of record for all parties.

*(signature)*
James F. Ring

---

[2] The Defendant's memoranda in support of its Motion to Compel and its Opposition to the Motion to Quash contain numerous references to difficulties that Defendant's counsel reportedly encountered in seeking to have the deposition take place (none of which are attributable, or alleged by the Defendant to have been in any way attributable, to any lack of cooperation by the Plaintiff or her counsel). For purposes of this Opposition, the Plaintiff would simply note that (i) those difficulties have no relevance whatsoever to the issues before the Court (ii) the Defendant's description of the procedural difficulties that it encountered are not, in any event, supported by affidavits, and (iii) the Plaintiff has only limited knowledge of those events, and thus does not adopt the description of those events as set forth in the Defendant's memoranda.

# MetLife

Xurui Deng
11 Oak Park
Bedford, MA 01730

Re: **Shangxi Zhang**
    Policy #: 000 176 694 ER

Dear Ms. Deng

We are sorry to hear about the death of Mr. Zhang. In order for us to process your claim as quickly as possible, we have been asked to meet with you and obtain some additional information.

Please either call me collect at the number below to arrange a date and time that would be convenient for us to meet or if I am not in the office, please call and leave a message so that I may return your call as soon as possible. Again, we are sorry for your loss.

Sincerely,

R. J. Medeiros
Home Office Representative
Office Phone: 401-828-4247

December 10, 2001

Metropolitan Life Insurance Company
700 Quaker Lane, PO Box 330, Warwick, RI 02887-0330



Mrs. Xurui Deng
11 Oak Park
Bedford MA  01730


Re:   Applicant    Shuangxi Zhang
      Application # 573930896MA


Dear Mrs. Deng,

Please accept our sincere condolences on the death of your husband.

We have received your claim on the application dated September 21, 2001 and the number listed above has been assigned for record purposes.

Certain inquiries are customary on recent applications for insurance. We are making these inquiries now and, as part of the process, a Company representative may be contacting you. Please be assured every effort will be made to conclude these inquiries as quickly as possible and we will keep you informed.

If you have any questions, please feel free to contact me at 401-827-2677.

Sincerely,

Kathleen M. M. Ferreira
Claims
Client Services

November 2, 2001

METLIFE
700 QUAKER LANE, P.O. BOX 330
WARWICK RI 02887-0330

**MetLife**

MRS XURUI DENG
11 OAK PARK
BEDFORD MA   01730

February 01, 2002

RE:   POLICY NUMBER    000 176 694 ER

      INSURED          Shuangxi Zhang

Dear Mrs. Deng,

The inquiries we are making in connection with your claim have not yet been completed. We are giving your claim our close attention and apologize for any delay.

We expect to complete our inquiries shortly, at which time you will hear further from us. Thank you for your continued patience.

Sincerely,

*Kathleen M. Ferreira*

Kathleen M. Ferreira
Personal Life Insurance Claims
1-800-MET-5000   (1-800-638-5000)

JOHN F. BROWN - (1891-1959)

NATHANIEL K. BROWN
MARK S. RAFFA
JAMES M. DONOVAN
AMY E. HUBBARD
PAMELA J. BROWN *

* ALSO ADMITTED IN NEW HAMPSHIRE

**BROWN & BROWN, P.C.**
COUNSELLORS-AT-LAW
110 GREAT ROAD
BEDFORD, MASSACHUSETTS 01730

TELEPHONE (781) 275-7267
TELECOPIER (781) 275-6940
WEBSITE: www.brown-brown-pc.com
Email: jdonovan@brown-brown-pc.com

February 3, 2003

Kathleen M. Ferreira
Metlife
700 Quaker Lane
P.O. Box 330
Warwick, RI 02887-0330

Re:   Insured: Shuangxi Zhang
      Policy No.: 000 176 694 ER
      Application No.: 573930896MA

Dear Ms. Ferreira:

Please be advised that this firm represents Sherry Young also known as Xurui Deng relative to the above-referenced matter. Please provide me with a status of the above-claim at your earliest convenience.

Thank you for your attention to this matter.

Very truly yours,
BROWN & BROWN, P.C.

James M. Donovan

JMD:rlw

000011

Metropolitan Life Insurance Company
700 Quaker Lane, PO Box 330, W   , RI 02887-0330



Brown & Brown P.C.
Counsellors-At-Law
Attention: James M. Donovan
110 Great Road
Bedford MA 01730

Re:   Insured            Shuangxi Zhang
      Application No.    000 176 694 ER

Dear Attorney Donovan,

This is in response to your letter dated February 3rd regarding the status of the claim on the above mentioned application number.

This claim continues to receive our attention. It is being reviewed by our Claims Advisory Department.

If you have any questions, please contact one of our Customer Service Consultants at 1-800-MET-5000 (1-800-638-5000).

Sincerely,

*Shelby Lyons*

Shelby Lyons
Claims
Client Services

February 6, 2003

Metropolitan Life Insurance Company

000012

JOHN F. BROWN - (1891-1959)

NATHANIEL K. BROWN
MARK S. RAFFA
JAMES M. DONOVAN
AMY E. HUBBARD
PAMELA J. BROWN *

* ALSO ADMITTED IN NEW HAMPSHIRE

**BROWN & BROWN, P.C.**
COUNSELLORS-AT-LAW
110 GREAT ROAD
BEDFORD, MASSACHUSETTS 01730

TELEPHONE (781) 275-7267
TELECOPIER (781) 275-6940
WEBSITE: www-brown-brown-pc-com
Email: jdonovan@brown-brown-pc.com

July 7, 2003

**CERTIFIED MAIL RETURN RECEIPT REQUESTED
ARTICLE #7002 2410 0000 6915 7671**
Metlife
700 Quaker Lane
P.O. Box 330
Warwick, RI 02887-0330

Attention: Shelby Lyons

Re:   Insured: Shuangxi Zhang
      Policy No. 000 176 694 ER
      Application No. 573930896MA

Dear Ms. Lyons:

As you are aware, this office continues to represent the interests of Sherry Young in connection with the above-referenced claim for life insurance benefits.

This is a demand for settlement pursuant to Massachusetts General Laws Chapter 93A and Massachusetts General Laws Chapter 176D. Mass. Gen. L. ch 93A is directed as unfair settlement practices and Mass. Gen. L. ch 176D applies to insurance claims practices. It is our position that the failure of Metropolitan Life Insurance Company to pay our client's claim for life insurance benefits is a violation of Mass. Gen. L. ch 176D, §3 (9) (b)(d) and (f) by "failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies", refusing to pay claims without conducting a reasonable investigation based upon all available information", and "failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."

Mass. Gen. L. ch. 93A, §9, allows claimants to file suit under Mass. Gen. L. ch. 93A for an insurance company's unfair claims practices under Mass. Gen. L. ch. 176D, §3 (9). The act subjects defendants to potential exposure for double or treble damages, attorney's fees and related costs. "The promotion of reasonable settlement offers is a prime goal of Mass. Gen. L. ch. 93A, §§9 and 11." International Fidelity Insurance Company v. Wilson, 387 Mass. 841, 857 (1983). "Indeed, the conduct proscribed by the statute is as much the failure to make a reasonable settlement offer as it is the substantive violation of Mass. Gen. L. ch. 93A. Multiple damages are 'the appropriate punishment' for forcing plaintiffs to litigate clearly valid claims." International Fidelity Insurance Company, Id. at 857. "The standard is objective and requires the

Metlife
Re: Shuangxi Zhang

July 7, 2003
Page 2

defendant to investigate the facts and consider the legal precedents." Heller v. Silverbranch, 376 Mass. 621, 628 (1978).

Mass. Gen. L. ch. 93A allows thirty (30) days from receipt of the demand letter for the insurance company to respond to the claimant's demand for settlement. Mass. Gen. L. ch. 93A's provisions for multiple damages is an attempt by the legislature to promote pre-litigation settlement by making it unprofitable for defendants to either ignore the plaintiff's request for relief or to bargain. Mass. Gen. L. ch. 93A, §9 (3); Heller v. Silverbranch, Id. at 627. It should also be noted that the burden is on the defendant to show the reasonableness of any settlement offer made in response to the plaintiff's demand. Patry v. Harmony Homes, Inc., 10 Mass. App. Ct. 1, 7 (1980).

Mass. Gen. L. ch. 176D, §3 (9) (f) imposes an obligation on an insurer to promptly and equitably settle insurance claims after liability has become reasonably clear. In addition, an insurer has an obligation to refrain from refusing to pay claims without conducting a reasonable investigation based upon all available information, and to provide a reasonable explanation of the basis of the insurance policy in relation to the facts or applicable law for denial of a claim or the offer of a compromised settlement. Mass. Gen. L. ch. 176D, §3 (9) (d). The insurer also has an obligation to settle valid claims. Murach v. Mass. Bonding Insurance Co., 339 Mass. 184 (1959).

Shuangxi Zhang died on October 10, 2001. Ms. Young applied for insurance benefits on October 24, 2001. Other than brief correspondence from time to time, you have failed to act reasonably promptly upon communications with respect to my client's claim. In essence, you have refused to pay her claim without conducting a reasonable investigation based upon all available information.

If you fail to pay the face amount of the policy and a Judge or Jury awards my client's claim, you will have breached your duty to settle this case, thereby subjecting your company and your insured to additional litigation.

If additional information is needed, please do not hesitate to contact me. Please safeguard this letter for your records as it may be introduced into evidence at trial.

Very truly yours,

Brown & Brown, P.C.

James M. Donovan

JMD/rlw
cc: client